IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ERIC CORNAVACA, ET AL.,

    Plaintiffs,

    v.

IVAN RIOS-MENA, ET AL.,

    Defendants.

**Civil No. 13-1767 (SEC)**

**OPINION AND ORDER**

Before the Court is the defendants' motion to dismiss, Docket # 8, and the plaintiffs' opposition thereto, Docket # 11. After reviewing the filings and the applicable law, this motion is **GRANTED in part and DENIED in part**.

**Factual and Procedural Background**

This is a case involving political discrimination claims stemming from the 2012 elections in Puerto Rico. The plaintiffs are Eric Cornavaca, Manuel Laboy, and Olivier Perrinjaquet, the former Administrator, "Innovation Center Business Development Manager," and "Research Economist," respectively, of the Research Economist of the Puerto Rico Science, Technology & Research Trust (Trust). They bring this civil rights action under 42 U.S.C. § 1983, alleging that the defendants fired them because of their political affiliation to the New Progressive Party (NPP). The defendants are the Trust itself; Iván Rios-Mena, the Trust's Executive Director; Elizabeth Solá-Oliver, the "Project Manager, Science District of the Trust"; and Alberto Bacó-Bagué, the Secretary of the Department of Economic Development and Commerce and President of the Trust's Board of Trustees. The defendants, who are allegedly affiliated to the opposing Popular Democratic Party (PDP), are sued in their personal and official capacities. As the defendants invoke Federal Rule of Civil Procedure 12(b)(6), a succinct recitation of well-pleaded facts — extending every reasonable inference in the plaintiffs' favor, see A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) — follows.

**Civil No. 13-1767 (SEC)**                                                                                                              Page 2

The Puerto Rico Legislature, through Law 214 of 2004, created the Trust "to define and implement the public policy of the Commonwealth . . . for science and technology research and development which shall include the establishment of an alliance between the Government and the private sector for the promotion and development of the same for the benefit of all Puerto Ricans." P.R. Laws Ann. tit. 23, § 695a(a). Law 214 provides that "The Council of Trustees," the Trust's governing body, § 695c(a)(1), is composed of 11 trustees, five of whom are so-called ex officio trustees (i.e., political appointees); the six other trustees are private citizens. § 695b(a).[1] Pertinently, the Council of Trustees have the "the power to sue and be sued as trustees as representatives of the Trust." § 695c(a).

The events giving rise to this suit coincided with the outcome of the November 2012 general elections, in which the PDP won control of the government, ousting the incumbent NPP administration. As part of the transition process, the complaint explains, the PDP transition team identified as a "pressing matter" that on December 31, 2012, the outgoing NPP trustees would "appoint 3 of Secretary Pérez-Riera's aides in positions within the Trust." Docket # 1, ¶ 22 (citation and internal quotation marks omitted). (Pérez-Riera, a well-known NPP supporter, had presided over the Council of Trustees before defendant Bacó-Bagué took over that position.) The "Trust is operating as if the elections had never happened," the transition report further stated. Id. ¶ 27 (citation and internal quotation marks omitted).

"Immediately following . . . . the change of administration on January 2, 2013," the complaint alleges, "rumors began circulating at the Trust that the incoming new ex officio members of the Board and the new administration were looking for ways to remove all personnel who were affiliated with the NPP and were associated with the previous NPP administration." Id. ¶ 8. In January 2013, defendant Solá-Oliver, who was the "Project Manager,

---

[1] The ex officio trustees are "those persons who hold office as Secretary of the Department of Economic Development and Commerce, the President of the University of Puerto Rico, the President of the Government Development Bank for Puerto Rico, the Executive Director of the Industrial Development Company and the Executive Director of the Office of Management and Budget . . . ." § 695b(a).

Science District of the Trust" between 2008 and 2013 (allegedly, she is now the "Aide to the Governor's Chief of Staff, Eng. Ingrid Vilá-Biaggi"), id. ¶ 8, told plaintiff Cornavaca, who had worked at the Trust since 2010, id. ¶ 62, "that she would meet at La Fortaleza to discuss the situation at the Trust." Id. ¶ 31. A day after that meeting, Solá-Oliver, who was Cornavaca's subordinate at that time, allegedly told Cornavaca that "he would be dismissed in the coming days," because he "was deemed to be affiliated with the NPP and too closely associated with the prior NPP administration." " Id. ¶ 34. The decision to terminate Cornavaca's employment, Solá-Oliver allegedly said, "had been made in spite of his accomplishments at the Trust." Id.

According to the complaint, Solá-Oliver also told Cornavaca that defendant Bacó-Bagué and Vilá-Biaggi "were very upset with the hiring of [p]laintiffs Laboy and Perrinjaquet because they were also associated with the NPP." Id. (Laboy and Perrinjaquet were recruited by Pérez-Riera in late 2012, shortly before the change of administration.) And as it happened, "on or about January 30, 2013," Bacó-Bagué sent a dismissal letter to Cornavaca advising "him [to] stay away from the premises . . . ." Id. ¶ 35 (internal quotation marks omitted). In February 2013, meanwhile, defendant Ríos-Mena — the trust's new Executive Director and former member of the PDP transition team — sent dismissal letters to Laboy and Perrinjaquet. Id. ¶¶ 56-57.

This § 1983 suit ensued in late 2013. Docket # 1. The plaintiffs advance four counts — two of which arise under federal law: Political discrimination claims under the First Amendment, id. ¶¶ 91-93, and procedural due process claims under the "Fifth and/or Fourteenth Amendments to the Constitution of the United States." Id. ¶¶ 95-98. The other two contain pendent local-law claims.

The defendants move to dismiss for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6), arguing that (1) because the Trust is a private entity, and because neither its employees nor its trustees are public officers, they cannot be sued under § 1983; (2) even if the Trust were "a state actor," the plaintiffs "implemented policy" and therefore could be terminated "for their political affiliation"; (3) the plaintiffs make no plausible

**Civil No. 13-1767 (SEC)**                                                                 Page 4

allegations with regard to defendant Solá-Oliver's involvement in the alleged discrimination; (4) because the plaintiffs have no property interest in their "continued employment at the Trust," they lack a plausible claim for violation of due process under the Fourteenth Amendment; (5) because neither defendant is a federal actor, the Fifth Amendment claims fail; and (6) the Eleventh Amendment bars monetary damages against defendant Bacó-Bagué in his official capacity as Secretary of the Department of Economic and Commercial Development. Docket # 8, p. 2.

The plaintiffs opposed each of these arguments. Docket # 11. Each contention is considered in turn.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. At the pleadings stage, courts must accept "the plaintiff's factual allegations and draw[ ] all reasonable inferences in the plaintiff's favor." Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir. 2014) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To forestall dismissal a complaint must "satisf[y] Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011) (citing Fed. R .Civ. P. 8(a)(2)).  So although the plaintiffs need not demonstrate likelihood of success, their allegations must nevertheless "'suggest more than a sheer possibility that a defendant has acted unlawfully.'" García-Catalán v. United States, 734 F.3d 100, 102-103 (1st Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Of course, an "element of a cause of action, . . . must be adequately alleged at the pleading stage in order for the case to proceed," Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1391 n. 6 (2014) (citing Iqbal, 556 U.S. at 678-679), but the Supreme Court has also required a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

A claim has facial plausibility when a "complaint's non-conclusory factual content . . . [permits] the court to draw the reasonable inference that [each] defendant is liable for the

**Civil No. 13-1767 (SEC)**                                                                                           Page 5

misconduct alleged.'" Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 639 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 663). Cognizant of the First Circuit's recent admonition that the plausibility standard is sometimes applied "'too mechanically,'" the court must "'read [the] complaint[ ] as a whole.'" Rodríguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico, 743 F.3d 278, 283 (1st Cir. 2014) (quoting García-Catalán, 734 F.3d at 101, 103). So viewed, a complaint "must contain more than a rote recital of the elements of a cause of action," though it need not include "detailed factual allegations," Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013) — "only enough facts to make the claim plausible" are required. Liu v. Amerco, 677 F.3d 489, 497 (1st Cir. 2012). "The place to test factual assertions for deficiencies and against conflicting evidence is at summary judgment or trial . . . ." Id.

**Applicable Law and Analysis**

*I.   Claims under the Constitution*

The analysis begins with 42 U.S.C. § 1983, which is the statutory predicate for the vindication of federal rights elsewhere conferred. E.g., Rehberg v. Paulk, 132 S. Ct. 1497, 1501 (2012). To make out a viable § 1983 claim, a "plaintiff[ ] must show by a preponderance of the evidence that (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). But government officials may only "be held liable if the plaintiff can establish [a] constitutional injury result[ing] from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodríguez-García v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir.2007) (internal quotation marks omitted), as there is no liability on the basis of respondeat superior, e.g., Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 91-92 (1st Cir. 1994).

As said, the defendants argue that the plaintiffs "have no cause of action under the Constitution of the United States because the Trust is a private employer." Docket # 9, p. 5.[2]

---

[2] Instead of focusing on the first prong of the § 1983 analysis — the "under color of state law" requirement — the defendants predicate this argument on the context of the First Amendment. In point

**Civil No. 13-1767 (SEC)**                                                                                          Page 6

The Court thus turns to the threshold question whether the decisions at issue in this case were taken under color of state law.

One need not dwell on this point, however, as this same argument — that the Trust is a private entity — was recently (and persuasively) rejected by my esteemed colleague, Judge Gustavo A. Gelpí, in Farb v. Pérez-Riera, 957 F. Supp. 2d 129, 136 (D.P.R. 2013) (finding, at motion-to-dismiss stage, that "the Trust is a public entity"); compare id. (noting that the "Trust receives public funding, is tax exempt, and is subject to the duties and powers of the Office of Management and Budget" (footnotes and citations omitted)); with Arroyo-Melecio v. Puerto Rican Am. Ins. Co., 398 F.3d 56, 62 (1st Cir. 2005) ("Though created by law, the [Joint Underwriting Association] 'is private in nature, for profit, and . . . subject to the provisions of the [Insurance] Code applicable to insurers.'" (second and third alterations in original; quoting enabling regulation). And regrettably, the defendants fail to disclose (and thus potentially distinguish) this case in their motion to dismiss. The upshot is that the Trust is, at most, a quasi-private entity, whose directors and employees can be sued under § 1983. See Aviles-Martínez v. Monroig, 963 F.2d 2, 4 (1st Cir. 1992) (entertaining § 1983 political discrimination suit against supervisors of the Automobile Accident Compensation Administration, "which is a quasi-private agency created by the Puerto Rican government").

In all events, the defendants' one-sentence asseveration that "the Legislative Assembly recognized the private character of the Trust upon its approval of Law 208," Docket # 8, p. 6, is insufficient to escape waiver. See, e.g., CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1525-1526 (1st Cir.1996) (three sentences with three undiscussed citations did

---

of fact, their motion to dismiss neither discusses nor analyzes caselaw regarding the first prong of the § 1983 standard, which is of course an antecedent issue. This distinction might end up being unimportant, though, "as Section 1983's 'under color of state law' requirement is the functional equivalent of the Fourteenth Amendment's 'state action' requirement," Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011), and the First Amendment applies to the States "by virtue of the Due Process Clause of the Fourteenth Amendment . . . ." United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 831 (1983).

not defeat waiver). But even putting that flaw aside, the same conclusion would follow: The defendants cannot show that the Trust is a private entity.

At bottom, the defendants' argument hinges entirely on the "Statement of Purpose" (though not in the statutory text) of an amendment to the Trust (Law 208 of 2011), in which the Puerto Rico Legislature apparently referred to the Trust "as a private non-profit trust." Id. (citation, internal quotations marks, and emphasis omitted). But even taking this stray remark at face value — the defendants attach no certified English translation of Law 208 — "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005); see also, e.g., A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 383 (2012) ([W]e are governed not by unexpressed or inadequately expressed "legislative goals" but by the law.") "[W]hen the legislative history is doubtful," Justice Frankfurter once famously quipped, "go to the statute." Greenwood v. United States, 350 U.S. 366, 374 (1956). And nothing in the statutory text even suggests that the Trust is a private entity. Cf. Postmaster-Gen. of U.S. v. Early, 25 U.S. 136, 148 (1827) (Marshall, C.J.) ("a mistaken opinion of the legislature concerning the law, does not make law."). To the contrary, as Judge Gelpí properly noted, "it is unclear whether such a self-defined characterization would be sufficient in light of . . . evidence to the contrary." Farb, 957 F. Supp. 2d at 135. To boot, "post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1081 (2011). This ends the matter.

Having established that the defendants were acting under color of Puerto Rico law, the Court turns to the second prong of the § 1983 analysis: Whether the defendants' actions impermissibly deprived the plaintiffs of any federally assured right.

*A. First Amendment Political Discrimination Claims*

It should go without saying that political discrimination is proscribed by the First Amendment of the United States Constitution. E.g., Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973). As the First Circuit has said, "[t]he right to associate with the political party of one's

**Civil No. 13-1767 (SEC)**                                                                 Page 8

choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment." Carrasquillo v. Puerto Rico ex rel. Justice Dep't., 494 F.3d 1, 4 (1st Cir. 2007). "[T]he First Amendment protects associational rights . . . [and] the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004). Specifically, it protects non-policymaking governmental employees "from job dismissals to promotion, transfer, recall, or hiring decision on the basis of political affiliation." Morales-Santiago v. Hernández-Pérez, 488 F.3d 465, 466 (1st Cir. 2007) (citing Rutan v. Republican Party, 497 U.S. 62, 79 (1990)).

Seeking dismissal from the political discrimination claims asserted against them, the defendants maintain that the plaintiffs fail to establish a prima facie case of political discrimination. See Docket # 8, p. 8 ("Plaintiffs' allegations in the Complaint which should support the causation requirement of the prima facie case are nothing more than speculation and conjecture unsupported by factual allegations."). But this single-minded approach is unavailing. It offends the First Circuit's recent holding that "a prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 51 (1st Cir. 2013); accord, e.g., Garayalde-Rijos v. Municipality of Carolina, --- F.3d ---, 2014 WL 1270607, at *4 (1st Cir. Mar. 28, 2014); Ramírez-Vega v. Wal-Mart Puerto Rico, Inc., No. 12-1361, 2012 WL 6597894, at *3 (D.P.R. Dec. 18, 2012).

At any rate, the Court agrees with the plaintiffs that their political discrimination claims survive dismissal: They plainly meet the plausibility standard. The short of it is that the plaintiffs have pled sufficient facts to plausibly show that the defendants, who are allegedly affiliated with the PDP (and were well aware of the plaintiffs' affiliation with the NPP), deprived the plaintiffs of their First Amendment constitutional rights because of their political affiliation to the NPP.[3] Where, as here, the defendants — especially Solá-Oliver — "were

---

[3]Generally, to state an actionable claim of political discrimination, the plaintiffs should "plausibly allege that he is not of the defendants' political affiliation and that the defendants were aware

voicing a need to shed . . . employees who did not share their particular political persuasion, it surely is plausible that the plaintiffs' political affiliations became a substantial or motivating factor behind their loss of employment." Rodríguez-Reyes, 711 F.3d at 56. This is especially so because, according to the complaint, the decisions to fire the plaintiffs were made by newly appointed officials loyal to the PPD "and in a politically charged atmosphere." Id. The exceedingly short temporal "proximity between the regime change and the adverse employment actions," id., buttresses this conclusion. To say more on this point would be pointless.

Nor can the defendants shoulder their "burden," Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 12 (1st Cir. 1996) (en banc), of establishing that plaintiffs held "political positions," for which party affiliation constitutes "an appropriate requirement for the effective performance of the public office involved," Branti v. Finkel, 445 U.S. 507, 518 (1980); see, e.g., Rodríguez-Ramos v. Hernández-Gregorat, 685 F.3d 34, 40 (1st Cir. 2012) ("It is well established that '[g]overnment officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment.'" (alteration in original; quoting Ocasio-Hernández, 640 F.3d at 13)). This circuit employs a bipartite test to determine the applicability of the so-called Branti/Elrod defense (also known as the "policymaking" or "position-of-trust" defense ). A court must first "look to whether the discharging agency's functions entail decision making on issues where there is room for political disagreement on goals or their implementation.'" O'Connell v. Marrero-Recio, 724 F.3d 117, 126 (1st Cir. 2013) (quoting Rosenberg v. City of Everett, 328 F.3d 12, 18 (1st Cir. 2003)). The second prong in turn asks "'whether the particular responsibilities of the plaintiff's position resemble those of a policy maker, privy to confidential information, a communicator, or some other office holder

---

of his affiliation. The complaint must also allege an adverse employment action and that political affiliation was a substantial or motivating factor for the adverse action." Rodríguez-Ramos, 685 F.3d at 40-41(citing Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir.2010)). Rodríguez-Reyes teaches that "[t]hose elements are part of the background against which a plausibility determination should be made." 711 F.3d at 55.

**Civil No. 13-1767 (SEC)** Page 10

whose function is such that party affiliation is an equally appropriate requirement for continued tenure.'" Id.

Refusing to bite the bullet, the Court declines to engage in this "fact-intensive" determination at the pleading stage. Ortiz-Piñero 84 F.3d at 12; accord Regan v. Boogertman, 984 F.2d 577, 580 (2d Cir. 1993) ("There must be an independent factual analysis of several factors to determine whether the position falls within the political dismissal exception contemplated in Branti."). Like the Mt. Healthy defense, which is generally "inappropriate at the motion to dismiss stage because the parties have not yet engaged in any significant discovery," Landrón & Vera, LLP v. Somoza-Colombani, No. 12-1858, 2013 WL 2422807, at *8 (D.P.R. June 3, 2013) (citation and internal quotation marks omitted), the Branti/Elrod defense (like most defenses) is better suited for summary-judgment adjudication, see Rodríguez-Vives, 743 F.3d at 283 ("The possibility of such a defense, though, is inadequate to allow a defendant to prevail on a motion to dismiss when the plaintiff alleges a materially different version of the facts") — at least where, as here, the determination whether the plaintiffs held "political positions" cannot be clearly ascertainable from the complaint, see Almonte v. City of Long Beach, 478 F.3d 100, 110 (2d Cir. 2007); Kolman v. Sheahan, 31 F.3d 429, 433 (7th Cir. 1994). Cf. Ruiz-Sánchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 252 (1st Cir. 2013) (reiterating that "[d]ismissal on the basis of an affirmative defense requires that (i) the facts establishing the defense are <u>definitively ascertainable</u> from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude" (emphasis added and citation and internal quotation marks omitted)).[4]

In any event, the defendants have omitted furnishing the "detailed official job description for" the plaintiff's positions. Olmeda v. Ortiz-Quiñonez, 434 F.3d 62, 66 (1st Cir. 2006). And that omission reinforces the conclusion that, at the pleadings stage, the defendants fall short of

---

[4] See also Maloy v. Ballori-Lage, 744 F.3d 250, 253 (1st Cir. 2014) (finding that "an assessment of a plaintiff's complaint does not entail consideration — much less require rebuttal — of the defendant's explanation for its action . . . ").

**Civil No. 13-1767 (SEC)**                                                                 Page 11

shouldering their burden of "demonstrat[ing] that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518.

At this plaintiff-friendly stage, where the Court must credit all plausible allegations, the plaintiffs have set forth facts establishing that the defendants were sufficiently involved in the plaintiffs' firing, and that political animus was a substantial or motivating factor behind such adverse employment actions.[5] The plaintiffs' allegations therefore nudge their claims "across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see also Liu, 677 F.3d at 497 (noting that Twombly and Iqbal "require that facts and not mere generalities be set forth in a complaint, but only enough facts to make the claim plausible, and at this stage reasonable inferences are taken in favor of the pleader" (citation omitted and emphasis added)). Of course, with the necessary evidentiary support, the defendants may still successfully challenge the plaintiffs' factual allegations at the summary-judgment stage. For now, however, their request is **DENIED**.

*B. Fourteenth Amendment Procedural Due Process Claims*

The Due Process Clause of the Fourteenth Amendment bars States — Puerto Rico is the functional equivalent of a State for § 1983 purposes, e.g., Deniz v. Municipality of Guaynabo, 285 F.3d 142, 145 (1st Cir. 2002) — from discharging, without due process of law, a government employee who has property interests in continued public employment. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985); see also, e.g., Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("due process of law" means that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" (quoting United States v. James Daniel Good Real Property, 510 U.S. 43, 48 (1993))). Another well-trodden principle dictates that "property interests are creatures of state law, and under the laws of Puerto Rico,

---

[5] This court can, alas, take judicial knowledge under Fed. R. Ev. 201(b)(1) of this type of "discriminatory sequence that is all too familiar in this circuit." Ocasio-Hernández, 640 F.3d at 19. "With each change in administration . . . the federal district courts in Puerto Rico are flooded with hundreds of political discrimination cases. . . ." Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 126 (1st Cir. 2004).

**Civil No. 13-1767 (SEC)**                                                                 Page 12

public employees who lawfully hold career positions have a protected property interest in continued employment in those positions." Casiano-Montañez v. State Ins. Fund Corp., 707 F.3d 124, 129 (1st Cir. 2013) (citing Costa-Urena v. Segarra, 590 F.3d 18, 27 (1st Cir.2009)). On the other hand, trust employees in Puerto Rico have no such constitutionally protected interest in their positions; they are "of free selection and removal." Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 29 (1st Cir. 2008) (citations and internal quotation marks omitted).

Here, the complaint alleges that plaintiffs Laboy and Perrinjaquet held career positions with the Trust; and that plaintiff Cornavaca was a "transitory" or non-permanent employee, whose contract with the Trust was set to expire on June 30, 3013. Docket # 1, ¶ 96.[6] Yet, according to the complaint, neither plaintiff received adequate notice before the defendants allegedly deprived them of a protected property interest in employment; nor, the plaintiffs further charge, were they provided either with a prior or subsequent hearing. Id. ¶ 97. That suffices to plead a plausible procedural due process claim. See Clukey v. Town of Camden, 717 F.3d 52, 64-55 (1st Cir. 2013) ("To state a procedural due process claim under § 1983, the plaintiff must allege facts which, if true, establish that the plaintiff (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law."). The defendants' arguments to the contrary, which essentially depend on the Trust's alleged private nature, are unpersuasive. The defendants' request to dismiss the plaintiffs' due process claims is, therefore, **DENIED**.

*C. Fifth Amendment Claims*

The defendants, asserting that no federal actors are involved in this case, also seek dismissal from the claims under the Fifth Amendment. Docket # 8, p. 18. As correctly argued by the defendants, the Due Process Clause of the Fifth Amendment applies "only to actions of

---

[6]"[U]nder First Circuit precedent and Puerto Rico law, transitory employees generally do not have a property interest in continued employment beyond their yearly terms of appointment." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 94 (1st Cir. 1997) (emphasis added and citations omitted). According to the complaint, Cornavaca was fired "on or about January 31, 2013," Docket # 1, ¶ 71, five months before the expiration of his contract.

**Civil No. 13-1767 (SEC)** Page 13

the federal government — not to those of state or local governments." Martínez-Rivera v. Sánchez-Ramos, 498 F.3d 3, 8 (1st Cir. 2007); see, e.g., id. (affirming dismissal of Fifth Amendment claims because police officers are state actors and not federal actors).

Failing to concede (as they must), the plaintiffs demur. "The Fifth Amendment may not apply directly to the states," goes the argument, "but it does establish the rights of citizens to a due process." Docket #11, p. 23. This vacuous argument is neither sound nor intelligible, however, and comes perilously close to transgressing Rule 11; see Fed. R. Civ. P. 11(b)(2) (legal contentions must be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"). Because the complaint contains no allegations that any of the defendants are federal actors, the Fifth Amendment claims fail at the starting gate, and the motion to dismiss is therefore **GRANTED** on this point.

*II.   Eleventh Amendment*

Next, defendant Bacó-Bagué seeks dismissal from the monetary claims against him in his official capacity as the Secretary of Economic Development and Commerce of Puerto Rico. Docket # 8, p. 19. The Eleventh Amendment, he correctly maintains, bars such claims. See, e.g., Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 700 (1st Cir.1995) ("it is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." (citation omitted)).

The plaintiffs resist this conclusion, arguing that the complaint "prays for injunctive relief against Defendant Bacó-Bagué . . . ." Docket # 11, p. 23; see Negrón-Almeda v. Santiago, 579 F.3d 45, 52 (1st Cir. 2009) ("the Eleventh Amendment does not bar claims for prospective injunctive relief against state officials in their official capacity." (citation omitted)). True, but this rejoinder merely defeats a straw man: Bacó-Bagué seeks dismissal from the monetary claims — not from the claims for injunctive relief asserted against him. The plaintiffs should have abandoned their claims for monetary damages against defendant Bacó-Bagué in his official

**Civil No. 13-1767 (SEC)** Page 14

capacity, if only to avoid wasting this court's time. See <u>Bobe-Muñiz v. Caribbean Restaurants, Inc.</u>, 76 F. Supp. 2d 171, 176 (D.P.R. 1999). The motion to dismiss is therefore **GRANTED** on this front.

   *III.*  *Supplementary Claims*

  One final task remains. The defendants request that the local-law claims against them be dismissed without prejudice. But because this request assumes the dismissal of the federal-law claims, it is **DENIED**.

  **Conclusion**

  For the reasons stated, the defendants' motion to dismiss is **GRANTED in part and DENIED in part**. The Fifth Amendment claims, and the claims for monetary damages against defendant Bacó-Bagué in his official capacity, are consequently **DISMISSED with prejudice**. All other claims remain. Partial Judgment will be entered accordingly.

  **SO ORDERED.**

  In San Juan, Puerto Rico, this 9th day of May, 2014.

            *s/ Salvador E. Casellas*
            SALVADOR E. CASELLAS
            U.S. Senior District Judge